IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| vs. | : |
| | :    No. 1:09-cr-200 |
| ORTIZ LAWRENCE HAWKINS, | : |
| Defendant. | : |

**<u>POSITION OF DEFENSE WITH RESPECT TO SENTENCING FACTORS</u>**

COMES NOW the defendant, Ortiz Lawrence Hawkins, by counsel James G. Connell, III, and submits this Position of the Defense with Respect to Sentencing Factors.

The Pre-Sentence Report calculates Mr. Hawkins' guidelines sentencing range as 262 to 324 months. The PSR has based this Total Offense Level of 34 and Criminal History Category of VI on the career offender guideline, USSG § 4B1.1, which is in turn based on the 100:1 crack-powder disparity found in 21 U.S.C. § 841(b)(I)(A).

This Court should sentence Mr. Hawkins to twenty years incarceration, the mandatory minimum required by 21 U.S.C. § 841(b) after the filing of an information under 21 U.S.C. § 851 establishing one prior conviction. The proposed sentence of twenty years is more than adequate to serve the deterrence, incapacitation, and retribution concerns of § 3553(a). The additional incarceration called for by the career offender guideline is greater than is necessary to comply with these purposes, and this Court should grant the downward variance necessary to impose the mandatory minimum sentence.

1

*Mr. Hawkins' crime*

When Mr. Hawkins was released from incarceration, George Wright helped him get back on his feet, by providing him money, buying him clothes—and ultimately reintroducing him to the drug business. From February 2008 to October 2008, Mr. Hawkins conspired with Mr. Wright and his friends to sell at least 500 grams but not more than 1.5 kilograms of crack cocaine.

In October 2008, Mr. Hawkins stopped selling cocaine, and made efforts to earn money legally. He cut off contact with his co-conspirators. He enrolled in classes to obtain certifications as a personal trainer and as an HVAC technician. And he focused more on his family life, especially on helping his nephew with homework and sports. But his attempts to cut off his criminal ties did not wipe out his past crimes, and authorities arrested Mr. Hawkins on April 6, 2009.

*Application of the career offender guideline*

As the PSR acknowledges on Worksheet A, USSG § 2D1.1 establishes a Base Offense Level of 34 for conspiracy to distribute between 500 grams and 1.5 kilograms of cocaine base. Even with the Criminal History Category VI established by the career offender guideline, Total Offense Level 31 (after adjustment for acceptance of responsibility) would result in a sentencing range of 188 to 235 months, entirely below the mandatory minimum sentence of 20 years.

The recommended sentence above the mandatory minimum established by the PSR is due entirely to the operation of USSG § 4B1.1, the career offender guideline. USSG § 4B1.1(b) establishes a Base Offense Level of 37 for offenses with a maximum sentence of life, and a Base Offense Level of 34 for offenses with a maximum sentence of 25 years or more.

Title 18 U.S.C. § 841(b), in turn, establishes the maximum penalty for conspiracy to distribute narcotics. Section 841(b) provides a maximum sentence of life for offenses involving 5000 grams of cocaine or 50 grams of cocaine base, and a maximum sentence of 40 years for offenses involving 500 grams of cocaine or 5 grams of cocaine base. This sentencing scheme, established in 1986, "treat[s] every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 567 (2007).

If this Court were sentencing Mr. Hawkins for conspiracy to distribute more than 500 grams but less than 1.5 kilograms of powder cocaine, the career offender guideline would provide a Base Offense Level of 34, identical to the Base Offense Level provided in § 2D1.1. The additional three levels for an offense with a life sentence are drawn directly from the 100:1 ratio provided in § 841 and incorporated into §4B1.1.

*Section 3553(a)*

Under current sentencing law, this Court can evaluate and act on arguments that "the Guidelines sentence itself fails to properly reflect the § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007). Here, the Guidelines sentence provided by § 4B1.1, linked to the 100:1 crack/powder disparity, is "greater than necessary[] to comply with the purposes" set forth in § 3553(a)(2). This Court should impose a sentence of twenty years as no greater than necessary to promote the § 3553(a) goals of deterrence, incapacitation, and retribution.

Ordinarily, the Sentencing Guidelines provide sentences which comply with the purposes of sentencing. One factor in the determination of what deference to give a Guidelines sentence is whether in formulating the Guideline at issue, the Sentencing Commission acted in "its characteristic

3

institutional role." *Kimbrough*, 128 S. Ct. at 575. The career offender guideline has its origin in 28 U.S.C. § 994(h), which directs the Sentencing Commission to craft guidelines which specify sentences at or near the maximum term for offenders with two or more prior violent or federal drug felonies.

Rather than reconcile competing sentencing philosophies, the Sentencing Commission generally took an empirical approach to crafting the Guidelines, reviewing 10,000 pre-sentence reports to determine appropriate sentencing ranges. USSG § 1A1.3 (policy statement). As with its approach to the 100:1 ratio, however, the Sentencing Commission fashioned § 4B1.1 based on "legislative direction" rather than the empirical data, resulting in "much larger relative increases" in punishment. United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 44 (1987) (excerpt attached); *cf. Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 594 n.2 (2007) (explaining that 100:1 ratio is based on mandatory minimums rather than empirical evidence); *Kimbrough*, 128 S. Ct. at 567 (same). For this reason, one judge has described the career offender guideline as "an artificial guideline that does not reflect the common experiences of trial judges." *United States v. Nichols*, 563 F. Supp. 2d 631, 638 (S.D. W.V. 2008).

Since originally promulgating § 4B1.1, the Sentencing Commission has repeatedly questioned whether the career offender guideline promotes the purposes of sentencing. First, the Sentencing Commission enacted Amendment 506 to limit the meaning of "Offense Statutory Maximum" to avoid "unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions." USSG, App. C, Amend. 506 (Nov. 1, 1994). The Supreme Court of the United States struck down Amendment 506

4

as inconsistent with 28 U.S.C. § 994(h), *United States v. LaBonte*, 520 U.S. 751, 762 (1997), and the Sentencing Commission reamended the career offender guideline.  USSG, App. C, Amend. 567 (Nov. 1, 1997).

More recently, the Sentencing Commission has explicitly questioned "whether the career offender guideline, especially as it applies to repeat drug offenders, clearly promotes an important purpose of sentencing."  United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing* 134 (2004).  The Sentencing Commission explained, "Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new sellers so long as the demand for a drug remains high." *Id.*  Because it is driven by a legislative mandate rather than empirical analysis, § 4B1.1 "makes the criminal history category a *less* perfect measure of recidivism risk than it would be without the inclusion of offenders qualifying on because of drug offenses." *Id.*

The 100:1 ratio in § 841(b) aggravates the problems inherent in the career offender guideline.  The 100:1 ratio governs whether a Base Offense Level of 37 for 5 or more grams of crack, or a Base Offense Level of 34 for 5 or more grams of powder cocaine, applies to a defendant.  *See United States v. Liddell*, 543 F.3d 877, 882 (7th Cir. 2008) (describing the impact of the 100:1 ratio on the career offender guidelines).  As the Supreme Court summarized in *Kimbrough*, the Sentencing Commission has concluded that the 100:1 ratio rests on false assumptions, is inconsistent with the goal of punishing wholesale traffickers more severely than retail dealers, promotes disrespect for the

criminal justice system, and is generally inconsistent with the goals of sentencing. *Kimbrough*, 128 S. Ct. at 568.

This Court has the discretion to fashion a sentence, consistent with the factors outlined in § 3553(a), which addresses problems in the Sentencing Guidelines, including the 100:1 ratio. *See Spears v. United States*, 129 S. Ct. 840, 842-43 (2009) (per curiam); *Kimbrough*, 128 S. Ct. at 575. The career offender guideline is no exception. *United States v. Knox*, __ F.3d __, 2009 U.S. App. LEXIS 15846, *19-20 (7th Cir. July 20, 2009); *United States v. Sanchez*, 517 F.3d 651, 666 (2d Cir. 2008). Indeed, even the United States has taken the position that a sentencing court has discretion to fashion an appropriate sentence in spite of both § 2D1.1 and § 4B1.1. *See* Memorandum of H. Marshall Jarrett, May 1, 2009, at 2 (attached); Letter of Joseph R. Wilson, March 14, 2008, at 2 (attached).[1]

Section 994(h) does not limit the discretion of this Court to fashion a sentence consistent with the goals of § 3553(a) below the career offender guideline. First, § 994(h) is a directive to the Sentencing Commission, rather than to sentencing courts. *Cf. United States v. LaBonte*, 520 U.S. 751, 760 n.5 (1997) (distinguishing between § 994(h) and the direction to a sentencing court in 18 U.S.C. § 5037(c)). Section 994(h) "only addresses what the Sentencing Commission must do; it doesn't require *sentencing courts* to impose sentences 'at or near' the statutory maximums." *Liddell*, 543 F.3d at 884. Congress intended this distinction; it explicitly rejected an amendment directing sentencing courts to sentence recidivists near the statutory maximum. *United States v. Sanchez*, 517

---

1 The Fourth Circuit does not appear to have addressed this issue in its published decisions. In its unpublished decisions, it has not been completely consistent. *Compare United States v. Foote*, 276 Fed. Appx. 307, 2008 U.S. App. LEXIS 9801 (4th Cir. 2008) (remanding for reconsideration of career offender sentence under *Kimbrough*) *with United States v. Blackshear*, 273 Fed. Appx. 235, 2008 U.S. App. Lexis 7679(4th Cir. 2008) (reaching opposite conclusion).

F.3d 651, 663-64 (2d Cir. 2008) (describing legislative history of § 994(h) and the Kennedy Amendment). Section 994(h) does not limit the sentencing discretion of this Court in any way.

Second, § 994(h) does not govern Mr. Hawkins' offense , conspiracy to distribute cocaine, by its plain terms. Its directive governs only a felony which is "an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of Title 46." §994(h)(1)(B). "Although substantive distribution offenses under § 841 are among the listed offenses, conspiracy offenses under § 846 are not." *Knox*, 2009 U.S. App. LEXIS 15846 at *14. "Because § 846 is not included in this statutory mandate, § 994(h) does not limit a district court's discretion under *Kimbrough* to consider the crack/powder disparity affecting a career offender convicted under § 846." *Id.* at *16.

Given that the Sentencing Commission did not act in its characteristic institutional role in promulgating the career § 4B1.1, and that the Commission has indicated that both the career offender guideline and the 100:1 disparity underlying it do not serve the goals of sentencing, this Court is entirely justified in fashioning a sentence that meets the goals of § 3553(a) regardless of the career offender guideline. The mandatory minimum sentence of twenty years is more than sufficient to provide just punishment for Mr. Hawkins' crime, and to protect the public and deter wrongdoing. Accordingly, this Court should impose a twenty year sentence as a downward variance from the Guidelines.

Respectfully submitted,

ORTIZ LAWRENCE HAWKINS
By counsel


_____/s/_____
James G. Connell, III
VSB No. 40790
Devine, Connell & Sheldon, P.L.C.
Counsel for Ortiz Lawrence Hawkins
10621 Jones Street, Suite 301A
Fairfax, VA 22030
(O) (703) 691-8410
 (F) (703) 251-0757
jgc3@devineconnell.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kathryn Haun
Assistant United States Attorney
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(O) (703) 299-3700
(F) (703) 299-3981
kathryn.haun@usdoj.gov

                                    _____/s/_____
                                    James G. Connell, III
                                    VSB No. 40790
                                    Devine, Connell & Sheldon, P.L.C.
                                    Counsel for Ortiz Lawrence Hawkins
                                    10621 Jones Street, Suite 301A
                                    Fairfax, VA 22030
                                    (O) (703) 691-8410
                                    (F) (703) 251-0757
                                    jgc3@devineconnell.com